236 F.3d 1137 (9th Cir. 2001)
 KLAUS LUECK; MARTIN G.ALEXANDER; MAREE GRAY; IAN GRAY; PETRA GRAY; ELLE GRAY; PETER ROBERTS; WILLIAM MCGRORY; MURRAY BROWN; DEAN L. MASON; JOHN AUSTIN; SHAYNE A. BLAKE; DAVID S. GREEN; ROBYN KEALL, individually and as special representative of the Estate of Jonathan P. Keall; JILL DIXON, individually and as special representative of the Estate of Reginald Dixon; BARBARA WHITE, individually and as special representative of the Estate of David John White; LUCILLE WHITE; MAXWELL WHITE; PAUL JOHN CAMERON, Plaintiffs-Appellants,
v.
SUNDSTRAND CORPORATION; HONEYWELL CORPORATION; HYDRAULIC UNITS, INC., dba Dowty Aerospace; MESSIER-DOWTY INTERNATIONAL; DEHA VILLAND, INC., Defendants-Appellees.
 No. 99-15961
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted October 6, 2000
Filed January 8, 2001
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 Steven D. Copple, Copple, Chamberlin, Boehm, & Murphy, Phoenix, Arizona, for the plaintiffs-appellants.
 Terry O'Reilly and Gary L. Simms, O'Reilly, Collins & Danko, Menlo Park, California, for the plaintiffs-appellants.
 James H. Marburger, Gust Rosenfeld, Phoenix, Arizona, for defendant-appellee Sundstrand Corporation.
 James A. Teilborg, Teilborg, Sanders & Park, Phoenix, Arizona for defendants-appellees Hydraulic Units, Inc., and Messier-Dowty International.
 Thad A. Demeris, Vinson & Elkins, Houston, Texas, for defendant-appellee Messier-Dowty International.
 James W. Hunt and Alan H. Collier, Mendez & Mount, Los Angeles, California, for defendant-appellee de Havilland, Inc.
 Edward R. Glady, Goodwin Raup, Phoenix, Arizona, for defendant-appellee deHavilland, Inc.
 Richard Clark Coyle and Kevin C. Osborn, Perkins Coie, Seattle, Washington, for defendant-appellee deHavilland, Inc.
 Appeal from the United States District Court for the District of Arizona Roger G. Strand, District Judge, Presiding. D.C. No.CV-97-2223-RGS
 Before: Mary M. Schroeder, Chief Judge, Robert R. Beezer and Richard A. Paez, Circuit Judges.
 PAEZ, Circuit Judge:
 
 
 1
 Plaintiffs appeal the district court's dismissal of their suit on the basis of forum non conveniens. Plaintiffs, citizens of New Zealand, are victims of an airplane crash in New Zealand, on a New Zealand carrier. Plaintiffs allege that the radio altimeter of the Ground Proximity Warning System ("GPWS") malfunctioned during flight and was a causal factor of the accident. Defendants, the Canadian manufacturer of the aircraft and the American manufacturers of the GPWS and the radio altimeter, argued that New Zealand was an adequate alternative forum and that the public and private factors weighed in favor of dismissal. The district court agreed with Defendants. We have jurisdiction under 28 U.S.C.S 1291, and we affirm.
 
 I. BACKGROUND
 A. Flight 703 and the Ensuing Investigation
 
 2
 On June 5, 1995, Ansett New Zealand ("Ansett") Flight 703 took off from Auckland with an intended destination of Palmerson North, New Zealand. The commuter flight carried 21 persons--three crew members and 18 passengers. All of the passengers were citizens of New Zealand, except for one who was a citizen of the United States. As the flight approached Palmerston North, the flight crew prepared for landing. The landing gear of the aircraft failed to lower hydraulically, so the pilot and co-pilot were forced to lower the landing gear manually. While the flight crew focused on lowering the landing gear, the aircraft flew toward the hilly terrain leading into Palmerston North. Although the aircraft's GPWS emitted an alarm four seconds before the aircraft hit the ground, the crew was unable to avoid the accident. The aircraft crashed into the ground, killing one member of the flight crew and three passengers and injuring all others on board.
 
 
 3
 The aircraft, a de Havilland DHC-8, was manufactured in Canada by defendant de Havilland, a Canadian corporation and a division of Boeing of Canada, Ltd., a subsidiary of The Boeing Company. The GPWS was manufactured by defendant Sundstrand Corporation in Washington State.[1] The GPWS was purchased by Ansett and installed on the aircraft by de Havilland. The GPWS operated through the use of a radio altimeter, which was manufactured by defendant Honeywell in Arizona.
 
 
 4
 New Zealand's Transport Accident Investigation Commission (the "Commission") investigated the causes and circumstances of the accident. The Commission Report ultimately identified the following causal factors of the accident:
 
 
 5
 the Captain not ensuring the aircraft intercepted and maintained the approach profile during the conduct of the non-precision instrument approach, the Cap tain's perseverance with his decision to get the undercarriage lowered without discontinuing the instrument approach, the Captain's distraction from the primary task of flying the aircraft safely during the First Officer's endeavours to correct an undercarriage malfunction, the First Officer not executing a Quick Reference Handbook procedure in the correct sequence, and the shortness of the [GPWS] warning.
 
 
 6
 The Commission evaluated the aircraft's radio altimeter and GPWS. Factory simulations on the GPWS indicated that at least 12 additional seconds of warning should have been provided by the system. The Commission found that the GPWS had been maintained properly by Ansett and that the radio altimeter retrieved from the crash site was operating normally. However, the Commission concluded that the "GPWS warning was insufficient for the aircraft to be extricated from its perilous position." The Commission could not establish the cause of the failure of the GPWS to give an earlier warning, but speculated that the "only reliable scenario . . . was related to a loss of radio altimeter tracking." The Commission asked Canada's transportation ministry to look into the performance of the GPWS and radio altimeter. Because the GPWS and radio altimeter were manufactured in the United States, Canada then asked the FAA to examine the performance of these components. The FAA investigation was conducted in Washington and Arizona.
 
 
 7
 B. New Zealand's Accident Compensation System
 
 
 8
 In 1972, the New Zealand legislature passed the Accident Compensation Act (the "Act"), amended in 1982, 1992, and 1998, which provides coverage, on a no-fault basis, for those who suffer personal injury arising from accidents.[2] The Act bars civil claims for damages, Accident Compensation Act, 1972, 5 (N.Z.), Accident Compensation Act, 1982, 27 (N.Z.), Accident Rehabilitation and Compensation Insurance Act, 1992, 14 (N.Z.), and instead provides for benefits from the Accident Rehabilitation and Compensation Insurance Corporation ("ACC"). Under the 1972 Act, those benefits "include[ ] [all] medical and rehabilitative expenses, compensation for eighty percent of lost earnings as long as disability continued, and lump-sum payments of up to $27,000 (N.Z.) for non-economic losses. . . ." Richard S. Miller, An Analysis and Critique of the 1992 Changes to New Zealand's Accident Compensation Scheme, 52 Md. L. Rev. 1070, 1070 (1993) (citing 1982 Act, Parts V VII). Under the 1992 Act, the compensation for lost earnings remains at 80 percent of the claimant's former salary, but is capped at $1,179 (N.Z.) per week. Id. at 1074 (citing 1992 Act, 39(1), 48, 70). But the 1992 amendments eliminated the lump-sum payments for non-economic losses. Id. at 1074-75. Instead, the Act now provides for a quarterly allowance based on the degree of the claimant's disability. Id. at 1075 (citing 1992 Act, 54). Medical expenses continue to be covered.
 
 
 9
 Under the 1992 Act, plaintiffs may sue for damages for mental distress not resulting from physical injury. Id. at 1072 (citing 1992 Act, 4(1), 8(3)). The Act also permits suits for punitive or exemplary damages. Id. at 1072 n.15 (citing Auckland City Council v. Blundell, 1 N.Z.L.R. 732, 739 (1986); Donselaar v. Donselaar, 1 N.Z.L.R. 97, 104-07 (1982)).
 
 
 10
 C. Plaintiffs' Efforts to Be Compensated for Their Losses
 
 
 11
 Plaintiffs Lueck, Alexander, Maree Gray, Ian Gray, Petra Gray, Elle Gray, Roberts, McGrory, Brown, Mason, Austin, Blake, Green, and Cameron were all injured in the crash. The families of those who were killed, Keall, Dixon, and White, are also plaintiffs. All but two of the plaintiffs filed claims with the ACC and have received compensation, alleging negligence and requesting exemplary damages. Plaintiffs are also pursuing a lawsuit against Ansett in New Zealand. Their claims against Ansett for compensatory damages were dismissed by the court as statutorily barred by New Zealand's accident compensation scheme, see McGrory v. Ansett New Zealand Ltd., 2 N.Z.L.R. 328 (1998), but their claims against Ansett for exemplary damages were allowed to go forward, as these claims are not barred by the Act, see id. The trial court judge's decision was affirmed by the New Zealand Court of Appeal in McGrory.
 
 
 12
 The defendants in this case are each responsible for manufacturing parts of the landing gear or the GPWS of the deHavilland aircraft. With the exception of defendant de Havilland, all are American corporations. Plaintiffs brought suit against Defendants in federal district court for the District of Arizona, alleging strict liability, negligence, and breach of warranty. They did not allege gross negligence or seek punitive damages. Defendants moved to dismiss the action, arguing that New Zealand provides a remedy for Plaintiffs' injuries and is a more convenient location for the suit. The district court granted the motion and dismissed the action. The only American citizen onboard the flight, who was the only American plaintiff in this suit, settled his claims after Plaintiffs filed their notice of appeal to this Court. Thus, all of the remaining plaintiffs are New Zealand citizens.
 
 II. DISCUSSION
 
 13
 A district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 504 (1947). In dismissing an action on forum non conveniens grounds the court must examine: (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22, 257 (1981); Gulf Oil, 330 U.S. at 507-09; Ceramic Corp. of America v. Inka Maritime Corp., 1 F.3d 947, 949 (9th Cir. 1993); Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 767 (9th Cir. 1991). We have also held that a district court must make a choice of law determination in considering whether to dismiss the action. Alpha Therapeutic Corp. v. Nippon Hoso Kyokai, 199 F.3d 1078, 1090 (9th Cir. 1999).
 
 
 14
 "The defendant bears the burden of proving the existence of an adequate alternative forum." Cheng v. Boeing Co., 708 F.2d 1406, 1411 (9th Cir. 1983). The Supreme Court has held that, where the plaintiff is a United States citizen, the defendant must satisfy a heavy burden of proof:
 
 
 15
 [A] plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum. . . . When the home forum has been chosen, it is reasonable to assume that this choice is conve nient. When the plaintiff is foreign, however, the assumption is much less reasonable.
 
 
 16
 Piper Aircraft, 454 U.S. at 256 (citation omitted). Therefore, the Court held, "a foreign plaintiff's choice deserves less deference." Id. But, as this court stated recently in Ravelo Monegro v. Rosa, 211 F.3d 509, 514 (9th Cir. 2000), petition for cert. filed, 69 U.S.L.W. 3346 (Nov. 7, 2000) (No. 00-755), "less deference is not the same thing as no deference."
 
 
 17
 A forum non conveniens determination is committed to the sound discretion of the district court. Gemini Capital Group, Inc. v. Yap Fishing Corp., 150 F.3d 1088, 1091 (9th Cir. 1998); Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd., 61 F.3d 696, 699 (9th Cir. 1995). The district court's decision "may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." Creative Tech., 61 F.3d at 699; see also Ceramic Corp., 1 F.3d at 949.
 
 A. Adequate Alternative Forum
 
 18
 The first requirement for a forum non conveniens dismissal is that an adequate alternative forum is available to the plaintiff. The Supreme Court has held that an alternative forum ordinarily exists when the defendant is amenable to service of process in the foreign forum. Piper Aircraft, 454 U.S. at 254 n.22; Contact Lumber Co. v. P.T. Moges Shipping Co., 918 F.2d 1446, 1449 (9th Cir. 1990). This threshold test is met here because Defendants have indicated that they are amenable to service of process in New Zealand.
 
 
 19
 Plaintiffs argue that New Zealand offers no remedy for their losses because it has "legislated tort law out of existence." Plaintiffs' argument, however, relies on a misdirected forum non conveniens inquiry. The district court was not required to ask whether Plaintiffs could bring this lawsuit in New Zealand, but rather, whether New Zealand offers a remedy for their losses. The district court did not abuse its discretion in finding that an adequate remedy is available in New Zealand.
 
 
 20
 The foreign forum must provide the plaintiff with some remedy for his wrong in order for the alternative forum to be adequate. As with the other requirements of a forum non conveniens dismissal, the burden of showing the existence of an adequate alternative forum is the defendant's. Cheng, 708 F.2d at 1411. However, it is only in "rare circumstances . . . where the remedy provided by the alternative forum .. . is so clearly inadequate or unsatisfactory, that it is no remedy at all," that this requirement is not met. Lockman Found., 930 F.2d at 768 (quoting Piper Aircraft, 454 U.S. at 254); see also Ceramic Corp., 1 F.3d at 949.
 
 
 21
 In Piper Aircraft, the Supreme Court held that a foreign country was not an inadequate forum merely because its laws offered the plaintiff a lesser remedy than he could expect to receive in the United States court system. There, the suit stemmed from the crash of a chartered aircraft in Scotland. The victims of the accident were Scottish, and the companies which owned and operated the aircraft and the air taxi service were incorporated in the United Kingdom. The plaintiff was the administratrix, appointed by a California probate court, of the estates of the five passengers. She was not related to any of the passengers. Relatives of the decedents had filed suit against the owners of the aircraft and air taxi service in the United Kingdom. The defendants in the American suit were the American manufacturers of the propeller and the aircraft. An inquiry into the causes of the crash found no evidence that the equipment was defective and concluded that pilot error may have caused the accident as the pilot had little experience and was flying the aircraft at a lower altitude than that recommended in the airline's operations manual. Piper Aircraft, 454 U.S. at 239.
 
 
 22
 Plaintiff brought suit against the defendants in the United States because Scottish law did not recognize strict liability in tort. Furthermore, Scottish law only permitted wrongful death actions when brought by a decedent's relatives, and, even then, the relatives could only recover for the "loss of support and society" of the decedent. Id. at 240. Plaintiff brought suit in the United States because "its laws regarding liability, capacity to sue, and damages [were] more favorable to her position than are those of Scotland." Id.
 
 
 23
 The Supreme Court reversed the Third Circuit, which had found that, where the law of the purported alternative forum is less favorable to the plaintiff, dismissal on forum non conveniens grounds is inappropriate. Because plaintiffs usually bring suit in the forum with the most favorable law, the Supreme Court found, the doctrine would be severely undercut by such a bright-line rule. Furthermore, by allowing dismissal to be avoided solely by showing the foreign forum's law was less favorable, the Third Circuit had failed to consider the whole picture and weigh the numerous factors which had previously been held to underlie the forum non conveniens analysis. The Court stated that the Circuit's ruling was contrary to the main purpose of the forum non conveniens doctrine: convenience. Id. at 249-51. The Supreme Court also noted that such a ruling would have the negative effect of requiring district courts to interpret the law of foreign jurisdictions; this outcome is diametrically opposed to another of the doctrine's purposes, as it was "designed in part to help courts avoid conducting complex exercises in comparative law." Id. at 251.
 
 
 24
 In this case, Plaintiffs' attorney has candidly admitted that the impetus for the lawsuit is money: United States law offers Plaintiffs a greater potential remedy for their losses than New Zealand law. A jury trial in the United States on these facts could yield significantly higher awards to Plaintiffs than the compensation they will receive from the ACC. Under Piper Aircraft, however, it is clear that this argument fails.
 
 
 25
 The effect of Piper Aircraft is that a foreign forum will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong. A New Zealand remedy is unquestionably available here. According to the complaint, the losses for which Plaintiffs seek compensation are their physical injuries sustained in the accident and the resulting loss of earnings. Plaintiffs do not dispute that they can file and have filed claims with the ACC for these losses; nor do they dispute that they have received compensation from the ACC for these losses. Although New Zealand law does not permit Plaintiffs to maintain this exact suit, New Zealand, through its no-fault accident compensation scheme, has provided and continues to provide a remedy for Plaintiffs' losses.[3] Plaintiffs have not shown that this type of administrative remedy is so inadequate that it is tantamount to no remedy at all. The forum non conveniens analysis does not look to the precise source of the plaintiff's remedy, so we will not require the alternative forum to offer a judicial remedy. Cf. Jeha v. Arabian American Oil Co., 751 F. Supp. 122, 125 (S.D. Tex. 1990) (holding that a "quasi-judicial special commission," made up of a judge, a legal adviser, a university professor, and two physicians, and designated to handle medical malpractice claims in Saudi Arabia, constitutes an adequate alternative forum), aff'd 936 F.2d 569 (5th Cir. 1991) (unpublished table decision).
 
 
 26
 Lastly, we observe that several other courts have found New Zealand's accident compensation system to provide an adequate alternative remedy. In re Silicone Gel Breast Implants Products Liability Litigation, 887 F. Supp. 1469 (N.D. Ala. 1995), involved wrongful death and personal injury actions against breast-implant manufacturers. The district court in that case found that those plaintiffs who were residents of New Zealand and had their implant performed in that country had an adequate remedy in New Zealand if they could either "use the court system or pursue administrative remedies" under the Act. 887 F. Supp. at 1475. That court clearly held that "[r]elegation of a claimant to an administrative forum for compensation [does] not, in and of itself, preclude dismissal based on forum non conveniens." Id. Stonnell v. Int'l Harvester Co., 478 N.E.2d 518 (Ill. App. Ct. 1985), involved the death in New Zealand of a 17-year-old New Zealand citizen who had been using a tractor manufactured in Great Britain. The Illinois appellate court found that the parents' wrongful death action could be dismissed on the basis of forum non conveniens because the parents could receive compensation under the Act. See id. at 1045 ("Although the amount of compensation payable . . . may not equal the damages plaintiffs could recover in an action brought under the Illinois Wrongful Death Act, that possibility does not render New Zealand an `unavailable' forum."). We agree with these other courts, which have found New Zealand's administrative remedy to be adequate.
 
 
 27
 B. The Balance of Public and Private Factors
 
 
 28
 Ordinarily, a plaintiff's choice of forum will not be disturbed unless the "private interest" and the "public interest" factors strongly favor trial in a foreign country. Gulf Oil, 330 U.S. at 509. We have further held that a foreign plaintiff's choice of forum merits less deference than that of a plaintiff who resides in the selected forum, and the showing required for dismissal is reduced. Gemini Capital, 150 F.3d at 1091. "[I]f the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." Lockman Found., 930 F.2d at 767 (quoting Piper Aircraft, 454 U.S. at 255 n.23).
 
 1. The Private Interest Factors
 
 29
 Courts consider the following private interest factors:
 
 
 30
 (1) the residence of the parties and the witnesses;
 
 
 31
 (2) the forum's convenience to the litigants;
 
 
 32
 (3) access to physical evidence and other sources of proof;
 
 
 33
 (4) whether unwilling witnesses can be compelled to testify;
 
 
 34
 (5) the cost of bringing witnesses to trial; (6) the enforce ability of the judgment; and
 
 
 35
 (7) "all other practical problems that make trial of a case easy, expeditious and inexpensive."
 
 
 36
 Gulf Oil, 330 U.S. at 508; Contact Lumber, 918 F.2d at 1449. The district court should look to any or all of the above factors which are relevant to the case before it, giving appropriate weight to each. Id. It should consider them together in arriving at a balanced conclusion. Id.
 
 
 37
 Plaintiffs and Defendants each find a different forum to be more convenient because each party focuses on different evidence and witnesses. Plaintiffs focus on the evidence relating to the testing of the radio altimeter and GPWS, which occurred in the United States, so they argue Arizona is a more convenient forum. Defendants, on the other hand, focus on the evidence relating to the crash itself and Plaintiffs' ongoing medical care, so they contend that New Zealand is a more convenient forum.
 
 
 38
 Specifically, Plaintiffs reference: (1) documents regarding the manufacturing and testing of the GPWS and radio altimeter (located in Washington and Arizona); (2) documents and witnesses regarding FAA compliance testing of the GPWS (Washington); and (3) evidence relating to the crash, including the flight data recorder, cockpit voice recorder, crash site drawings and photographs, all of which Plaintiffs say is transportable to Arizona. Documents and witnesses regarding the maintenance of the GPWS, they argue, are not necessary because this is not in issue.
 
 
 39
 Defendants, on the other hand, list numerous witnesses and evidence which are located in New Zealand, including the aircraft wreckage, the flight crew, crash investigators, Plaintiffs, Plaintiffs' doctors and employers, airline and aircraft records, investigation records, and records regarding the qualifications of the flight crew and their employment. They also note the relevance of the documents and witnesses listed by Plaintiffs that are located in the United States and Canada.
 
 
 40
 We have said previously that a court's focus should not rest on the number of witnesses or quantity of evidence in each locale. Rather, a court should evaluate "the materiality and importance of the anticipated [evidence and] witnesses' testimony and then determine[ ] their accessibility and convenience to the forum." Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1335-36 (9th Cir. 1984).
 
 
 41
 Both the United States evidence and the New Zealan devidence are crucial to this dispute. At trial, the manufacturing of the components will be considered, as will the post crash tests which were conducted. However, the performance of the components during Flight 703 is ultimately in issue, and, for that reason, the New Zealand evidence relating to the accident is essential to this suit as well. The New Zealand evidence will go to the liability of Defendants for the crash, because the jury will need to consider the performance of the equipment in relation to the performance of the flight crew. As Defendants note, evidence relating to Plaintiffs' injuries, medical expenses, and loss of earnings, are crucial to the damages portion of this suit, and these witnesses and documents, although under Plaintiffs' control, are all in New Zealand. Finally, when the jury determines damages, it will consider the relative fault of Defendants and Ansett. Plaintiffs suggest that, because Arizona has done away with joint and several liability, Defendants need not worry about Ansett because "defendants will be responsible only for their fair share." Defendants' "fair share," however, can only be determined in relation to Ansett's liability. For these reasons, records relating to the flight crew and their performance during the flight will be necessary.
 
 
 42
 Although crucial documents and witnesses exist in both fora, the private interest factors are not in equipoise. The documents and witnesses in the United States are all under the control of Plaintiffs and Defendants, so they can be brought to court, no matter the forum. The documents and witnesses in New Zealand, however, are not so easily summoned to the United States. Though some of the New Zealand evidence is under Plaintiffs' control, including Plaintiffs' medical and employment records, many of the New Zealand documents and witnesses are under the control of the New Zealand government or Ansett. The district court does not have the power to order the production or appearance of such evidence and witnesses. Plaintiffs claim that their access to proof would suffer if the case moved to New Zealand, because the unit of defendant Sundstrand which is responsible for the GPWS has been acquired by a different corporation, Allied Signal. They argue that a New Zealand court could not compel the production of documents and witnesses under the control of Allied Signal, a third-party to the suit. Defendants successfully rebut this argument. Allied Signal has agreed to produce any documents and make available any witnesses in New Zealand which it would have been required to produce in the United States.
 
 
 43
 It is clear that evidence important to this dispute exists in both the United States and New Zealand.[4] However, because the district court cannot compel production of much of the New Zealand evidence, whereas the parties control, and therefore can bring, all the United States evidence to New Zealand, the private interest factors weigh in favor of dismissal.
 
 
 44
 Furthermore, as noted above, Plaintiffs are maintaining a suit against Ansett, the carrier, in New Zealand. Ansett, though not a party to this suit, controls documents and witnesses that are relevant to this dispute. Although Plaintiffs characterize the instant suit as focusing on the GPWS rather than the accident, the fact is that both this and the Ansett lawsuits revolve around the causes of the accident. Therefore, a significant number of the same witnesses will be needed in both proceedings and much the same evidence will have to be presented to both courts. Currently, the main difference is that Defendants are not parties to the Ansett suit. If they are brought into that suit, all the evidence under their control would have to be produced in New Zealand. Defendants, who have brought this motion, are willing to cooperate in the production of evidence. Given the existence of the related proceedings, it is all the more clear that the private interest factors weigh in favor of dismissal.
 
 2. The Public Interest Factors
 
 45
 Courts consider the following public interest factors:
 
 
 46
 (1) local interest of lawsuit;
 
 
 47
 (2) the court's familiarity with governing law;
 
 
 48
 (3) burden on local courts and juries;
 
 
 49
 (4) congestion in the court; and
 
 
 50
 (5) the costs of resolving a dispute unrelated to this forum.
 
 
 51
 Piper Aircraft, 454 U.S. at 259-61; Gulf Oil, 330 U.S. at 50809.
 
 
 52
 The public interest factors weigh against maintenance of this action in Arizona. None of the remaining plaintiffs are citizens or residents of the United States. One of the defendants is a citizen of the chosen forum: Honeywell, which manufactured the radio altimeter in issue. The citizens of Arizona certainly have an interest in the manufacturing of defective products by corporations located in their forum. However, this interest is slight compared to the time and resources the district court in Arizona would expend if it were to retain jurisdiction over this dispute. Furthermore, the interest in New Zealand regarding this suit is extremely high. The crash involved a New Zealand airline carrying New Zealand passengers. The accident and its aftermath, including the accident investigation, the post-investigation activity, and the various legal proceedings including an ongoing criminal probe, have all received significant attention by the local media. Because the local interest in this lawsuit is comparatively low, the citizens of Arizona should not be forced to bear the burden of this dispute.
 
 C. Choice of Law Analysis
 
 53
 This court has held that "[b]efore dismissing a case for forum non conveniens, a district court must first make a choice of law determination." Zipfel v. Halliburton Co., 832 F.2d 1477, 1482 (9th Cir. 1987), amended on other grounds by 861 F.2d 565 (9th Cir. 1988). However, the choice of law analysis is only determinative when the case involves a United States statute requiring venue in the United States, such as the Jones Act or the Federal Employers' Liability Act. See Creative Tech., 61 F.3d at 700. The Jones Act, 46 U.S.C. 688(a), and the Federal Employers' Liability Act, 45 U.S.C. 56, "contain special provisions mandating venue in the United States district courts." Creative Tech., 61 F.3d at 700. The purpose of a choice of law inquiry in a forum non conveniens analysis is to determine if one of these statutes would apply. See id.[5]
 
 
 54
 Where no such law is implicated, the choice of law determination is given much less deference on a forum non conveniens inquiry. Because "there is no arguably applicable law that would end the forum non conveniens inquiry[in this case], . . . no potentially dispositive choice of law determination need have been made." Lockman Found., 930 F.2d at 771; see also Gemini Capital, 150 F.3d at 1092 ("This case does not implicate any United States law which mandates venue in the United States district courts. Consequently, the applicability of United States law to the various causes of action `should ordinarily not be given conclusive or even substantive weight.' ") (quoting Piper Aircraft, 454 U.S. at 247).[6]
 
 
 55
 Accordingly, because New Zealand provides an adequate alternative forum and based on the balance of public and private factors, we find that the district court did not abuse its discretion in dismissing this suit on forum non conveniens grounds. The dismissal of this action is AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The division of Sundstrand which manufactured the GPWS has since been acquired by AlliedSignal corporation.
 
 
 [2]
 The 1992 amendment renamed the Act as the Accident Rehabilitation and Compensation Insurance Act. The 1998 amendments, the Accident Insurance Act, only affect workplace accidents. Graeme Peters, Insurance D-Day is Looming, 1999 WL 19819017, Evening Post, June 19, 1999, at 15.
 
 
 [3]
 Plaintiffs could apparently also bring a punitive damages action in a New Zealand court, even though they did not ask for punitive damages in this case.
 
 
 [4]
 There is also relevant evidence in Canada; but because that evidence must be transported regardless of the ultimate forum, it does not affect the outcome of this case.
 
 
 [5]
 We do not read this court's decision in Alpha Therapeutic as creating a broader role for the choice of law inquiry. Alpha Therapeutic relied on Contact Lumber, 918 F.2d 1446, for the proposition that "the district court must . . . make a choice of law determination." 199 F.3d at 1090. But Contact Lumber clearly limited the choice of law inquiry to statutes like the Jones Act, which mandate venue in a United States district court. Because Contact Lumber involved a statute that did not bar dismissal on forum non conveniens grounds, the court held that "even assuming the applicability of U.S. law, appellants have no entitlement to have their case heard in a U.S. court." 918 F.2d at 1451.
 
 
 [6]
 The choice of law inquiry would, nevertheless, counsel in favor of dismissing the suit. The district court found it "would likely be required to interpret and apply New Zealand law, law with which it is unfamiliar." Despite the preemption of most litigation over personal injury arising from accident, because New Zealand law is likely to apply in this suit, the choice of law determination weighs in favor of dismissal.