**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BOSTON TELECOMMUNICATIONS
GROUP, INC.; RODERICK MARSHALL,
            *Plaintiffs-Appellants,*

v.

ROBERT WOOD,
            *Defendant-Appellee.*

No. 08-16358

D.C. No.
3:02-CV-05971-
JSW

OPINION

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted
October 8, 2009—San Francisco, California

Filed December 9, 2009

Before: J. Clifford Wallace, David R. Thompson and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Wallace

16017

## COUNSEL

Steven M. Cowley, Esq., Boston, Massachusetts, for plaintiffs-appellants Boston Telecommunications Group, Inc. and Roderick Marshall.

Susan K. Jamison, Esq., San Francisco, California, for defendant-appellee Robert Wood.

## OPINION

WALLACE, Senior Circuit Judge:

Plaintiffs-appellants Boston Telecommunications Group, Inc. (BTG) and Roderick Marshall (collectively, Marshall) appeal from the judgment of dismissal of claims against defendant-appellee Robert Wood arising out of an allegedly

fraudulent business venture. The district court dismissed the action on forum non conveniens grounds. We have jurisdiction over Marshall's appeal pursuant to 28 U.S.C. § 1291, and we reverse.

## I.

The following are facts as alleged in Marshall's first amended complaint, except where otherwise stated. In late 1995 and early 1996, Marshall, a United States citizen, was living and working in Bratislava, Slovakia, providing legal services to various Slovak entities. During much of this time, he shared office space with Deloitte & Touche Slovakia, s.r.o. (Deloitte Slovakia), an entity providing consulting, auditing and other professional services. Marshall became acquainted with another American citizen, Robert Wood, who was then managing partner of Deloitte Slovakia.

Around April 1996, Wood began soliciting Marshall to invest in a business venture being pursued by a Deloitte Slovakia client, Global Cable Systems, Inc. (GCS), a Canadian company. Wood told Marshall that GCS was planning to acquire two Bulgarian cable television companies (the Bulgarian Venture), but needed funds to consummate the purchases. Wood further represented that GCS had signed a joint venture agreement (the Joint Venture) with a handful of other companies (United & Phillips Communications BV, itself a joint venture between an American company and a subsidiary of a Dutch company; Tevel Israel International Communications, Ltd., an Israeli corporation; and Bezeq Israel Telecommunications Company, Ltd., another Israeli company) pursuant to which those companies would pay GCS for the Bulgarian cable television companies.

Wood told Marshall that Deloitte Slovakia was assisting GCS with certain tasks related to the acquisition, but that financing for GCS's purchase of the Bulgarian cable television companies had fallen through and without a replacement

investor, Wood might lose his job. Wood told Marshall that if Marshall invested $250,000 in the Bulgarian Venture, Deloitte Slovakia would give Marshall business referrals, offer Marshall future partnership in Deloitte Slovakia, guarantee the value of the Bulgarian Venture, and loan Marshall the amount of his investment. Wood provided various documents related to the Bulgarian Venture, including a valuation report prepared for GCS by Deloitte Slovakia (the Deloitte Valuation) and a copy of the signed Joint Venture agreement.

Initial discussions between Wood and Marshall apparently took place in Slovakia, and another meeting was held in Israel, attended by Wood, Marshall, GCS's chief executive officer George Mainas, and others, to discuss certain aspects of the proposed transactions. On Mainas's invitation, Marshall and Wood traveled to Vancouver and San Francisco to negotiate Marshall's investment. Mainas lived and worked in the San Francisco area and GCS was based in Vancouver. In opposition to Wood's renewed motion to dismiss on grounds of forum non conveniens, Marshall alleged that GCS was operated, in substantial part, from Mainas's offices in California. At these meetings in June 1996, Wood "reiterated" his previous representations, and in reliance on these and other representations, Marshall agreed to invest $250,000. In order to carry out the contemplated transactions, Marshall formed plaintiff BTG, which would enter into a partnership (the Partnership) with a subsidiary of GCS.

Upon their return to Slovakia, Marshall and Wood arranged for financing, through a Slovakian bank, of Marshall's $250,000 investment. During the Summer of 1996, Marshall and Avraham Zimmerman, a shareholder of GCS, engaged in various negotiations on behalf of the Partnership for the purchase of the Bulgarian cable television companies. By late August 1996, Marshall believed that the Partnership agreement had been finalized, that one of the target Bulgarian cable television companies had been purchased, and that an agreement had been reached with the seller as to the other one.

In September 1996, at Mainas's invitation, Marshall returned to Vancouver for a GCS meeting. Mainas asked Marshall for an additional investment, allegedly because the Bulgarian Venture was undervalued and it would appear to GCS shareholders that Mainas had sold half of GCS's business opportunity to Marshall at a fraction of its value. Mainas, Wood, Marshall and Zimmerman then traveled to San Francisco and, over the course of about three days, negotiated an arrangement pursuant to which BTG would invest an additional $250,000 in the Partnership. During these negotiations, Wood repeated many of the same representations he had already made. Based on those representations, Marshall agreed to invest the additional funds, and subsequently obtained financing for that investment through the same Slovakian bank.

By July 1997, however, Marshall learned that Mainas, GCS and its subsidiary had not taken certain necessary steps to complete the purchases of the two Bulgarian cable television companies. Marshall threatened litigation against GCS, but Wood continued, throughout the rest of 1997 and early 1998, to reassure Marshall that the necessary steps would be taken and that in any event, Marshall's investment was protected because Deloitte Slovakia had guaranteed it. In the Spring of 1999, Wood was transferred to a job in Yugoslavia with a different Deloitte entity, but the parties continued to communicate by telephone. Wood also continued to represent that he and Deloitte Slovakia were working toward completing the Bulgarian Venture. In reliance on Wood's representations, Marshall did not sue GCS.

In 2000, Wood returned to Deloitte Slovakia. Wood's subsequent conduct led Marshall to believe that Wood was trying to intimidate him, so that he would not seek to enforce Deloitte Slovakia's guarantee of his investment or investigate the matter further. By the end of 2002, Marshall obtained information that caused him to conclude that Wood had knowingly or recklessly made a number of fundamental fac-

tual misrepresentations, including: that some of the documentation Marshall had received in connection with his investment was fraudulent; that the Joint Venture had been dissolved long before Wood convinced Marshall to invest; that the Joint Venture agreement contained a forged signature or had been terminated at the time Wood convinced Marshall to invest; that Wood, Mainas and others had acted to deceive Marshall for their own benefit; and that Deloitte Slovakia had never intended to guarantee Marshall's investment.

## II.

In December 2002, Marshall filed an action in the Northern District of California against Wood, Mainas, GCS (under the name "Consolidated Global Cable Systems, Inc."), and "Deloitte Touche Tohmatsu," which he characterized as a Swiss Verein with a United States headquarters and operations in approximately 90 countries, including Slovakia, through its "affiliate and agent" Deloitte Slovakia. The complaint was amended in March 2003 to add Deloitte Slovakia and a handful of other Deloitte-related entities as defendants.

The defendants moved to dismiss the complaint on several grounds. Wood moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(5), arguing that he had not been served properly. The Deloitte entities moved to dismiss for lack of personal jurisdiction, and Wood later attempted to "join" those motions. Mainas and GCS moved to dismiss on the grounds that there was a mandatory arbitration clause in the Partnership agreement between GCS and BTG. All defendants moved to dismiss on forum non conveniens grounds.

In 2003, the district court dismissed the claims against Mainas and GCS in favor of arbitration, and in 2004 dismissed the claims against the Deloitte entities and Wood for lack of personal jurisdiction. Having dismissed all claims, the district court did not address the forum non conveniens issue.

Marshall appealed and we affirmed the dismissals of Mainas, GCS and the Deloitte entities, but reversed the dismissal of Wood, reasoning that Wood had waived any personal jurisdiction defense by failing to raise it at the same time he brought his Rule 12(b)(5) motion. The case was remanded to the district court, with Wood the sole remaining defendant.

On remand, Wood renewed his motion to dismiss on forum non conveniens grounds. Marshall opposed that motion. The district court granted Wood's motion to dismiss on the conditions that (1) the courts of Slovakia accept the parties' agreement to toll the statute of limitations and (2) Wood accept service of process in Slovakia. Marshall now appeals.

## III.

**[1]** We have held that a district court considering a motion for dismissal on the ground of forum non conveniens must decide

> whether defendants have made a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent. *Forum non conveniens* is an exceptional tool to be employed sparingly, not a doctrine that compels plaintiffs to choose the optimal forum for their claim.

*Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (internal quotation marks, citations and alterations omitted).

**[2]** A party seeking dismissal of an action on forum non conveniens grounds "must show two things: (1) the existence of an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656,

664 (9th Cir. 2009) (internal quotation marks and citation omitted). Here, Marshall does not question the district court's determination that Slovakia provides "an adequate alternative forum" for the case, and thus we will not address that portion of the district court's ruling.

**[3]** Marshall urges, instead, that the district court incorrectly concluded that the balance of relevant private and public interest factors favored dismissal. In weighing the relevant private and public interest factors, "[o]rdinarily, a plaintiff's choice of forum will not be disturbed unless the 'private interest' and the 'public interest' factors strongly favor trial in a foreign country." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001).

We review the district court's dismissal in this action with the understanding that a determination of forum non conveniens "is committed to the sound discretion of the trial court" and "may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 699 (9th Cir. 1995) (internal quotation marks and citation omitted); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).

## IV.

**[4]** We turn first to the private interest factors at issue in this case. The private interest factors to be weighed in a forum non conveniens inquiry are:

> (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6)

> the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Lueck*, 236 F.3d at 1145 (internal quotation marks and citations omitted).

   With regard to the residence of the parties, BTG is a Delaware corporation with its principal place of business in Massachusetts; Marshall is a United States citizen who resides in New Hampshire; and Wood is a United States citizen. In 2003, in support of his initial motion to dismiss on forum non conveniens grounds, Wood averred that he had been working in Eastern Europe, particularly in Bratislava, since 1992. In February 2008, in support of his renewed motion to dismiss on forum non conveniens grounds, Wood stated that he was living in Albania and that his wife and children, although living in North Carolina, intended to move to Slovakia later that year. Wood averred he would divide his time between Slovakia and Albania after his family's relocation.

   The district court held that the private interest factor of the parties' residences was neutral because the parties resided in neither of the potential forums (California or Slovakia). Marshall argues that the district court failed to give proper deference to his choice of forum. Although California is not Marshall's "home" forum, as he is a New Hampshire resident, Marshall is a United States citizen and resident suing in a United States forum. In that sense, Marshall asserts, he is suing in his "home" forum.

   We have held that the mere "presence of American plaintiffs . . . is not in and of itself sufficient to bar a district court from dismissing a case on the ground of *forum non conveniens*." *Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983). Moreover, in *Gemini Capital Group, Inc. v. Yap Fishing Corp.*, 150 F.3d 1088 (9th Cir. 1998) (*Gemini Capital*), we held that a United States citizen's decision to sue in

Hawaii, even though he was not a Hawaii resident, was properly accorded less deference than if Hawaii had been his true "home" forum. *Id.* at 1090-91; *see also Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1449 (9th Cir. 1990). Even if Marshall's choice of forum was due "less" deference than if he had been a California resident, *Gemini Capital* did not disturb our earlier admonitions that, "where the plaintiff is a United States citizen, the defendant must satisfy a heavy burden of proof," *Lueck*, 236 F.3d at 1143, and that " 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.' " *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1334-35 (9th Cir. 1984), *quoting Manu Int'l, S.A. v. Avon Prods., Inc.*, 641 F.2d 62, 65 (2d Cir. 1981). *Gemini Capital* did not hold that an American citizen suing in a state other than his state of residence deserves no more deference than a truly "foreign" plaintiff (*i.e.*, someone who is not a United States citizen or resident). Indeed, even as to such quintessentially foreign plaintiffs, it is clear that "less deference is not the same thing as no deference." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000).

**[5]** Here, the district court acknowledged that it had an obligation to afford Marshall's choice of forum "the deference it is due," but proceeded to hold that the private interest factor of the parties' residences was neutral. Although Marshall would stand in a stronger position were he a California resident, Marshall is a citizen and resident of the United States and his choice of forum is therefore entitled to more deference than that shown by the district court.

**[6]** Turning to the next private interest factor, the forum's convenience to the litigants, Wood argued that defending an action in California would be "extraordinarily burdensome and expensive" for him given the difficulty communicating or meeting with his legal counsel, the expense and time required to travel between Europe and California, and the possibility that he may have to retain two sets of counsel. These same

considerations would apply, however, if Marshall were to bring his case in Slovakia. The district court properly concluded that this factor was neutral.

We next compare the ease of access to physical evidence and other sources of proof if this case is litigated in California versus Slovakia. Wood argues that he has no control over the documents that he intends to use in his defense, because those documents are in the custody of Deloitte Slovakia, which no longer employs him. Wood also asserts that his defense requires access to documents located in Slovakia or nearby European countries, such as documents allegedly held by other Deloitte entities and by the Slovakian bank that provided financing to Marshall.

**[7]** But if this case proceeds in California, Wood may seek these documents through procedures for international third-party discovery, such as those under the Hague Convention on Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. 2555 (1968). "Any court . . . will necessarily face some difficulty in securing evidence from abroad," but these complications do not necessarily justify dismissal. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006). Moreover, Marshall points out that many of the documents to which Wood refers were prepared by Deloitte Slovakia on behalf of its client, GCS. It is reasonable to assume that many of such documents exist in the files of GCS or its CEO, Mainas, who is a California resident. Although GCS was incorporated in Canada, Marshall alleges that GCS's business was effectively operated from Mainas's California offices. Other key documents are in Marshall's custody, including the documents given to Marshall containing representations about the transaction; these documents may be obtained wherever Marshall's action proceeds. Other documents pertaining to the Joint Venture — relevant to Marshall's claims that Wood misrepresented the status of the Joint Venture — are likely in the custody of the other purported parties to the Joint Venture. Those companies, according to Marshall, were based in Colo-

rado, the Netherlands and Israel. The difficulty of obtaining those documents for a lawsuit in Slovakia is likely to be equal to, or perhaps even greater than, the difficulty of obtaining them for purposes of an action in California. Overall, Wood has not made a strong showing that this private interest factor favors dismissal. The comparative difficulties presented by litigation in either of the two potential jurisdictions are, at best, in equipoise.

The next private interest factor to be weighed deals with the potential witnesses in the case. Here, we look to where witnesses reside, whether unwilling witnesses can be compelled to testify, and the cost of bringing witnesses to trial. For efficiency, we will consolidate our discussion of all of the private interest factors related to witnesses — the first, fourth and fifth factors outlined in *Lueck*.

Marshall argues that "the two most important non-party witnesses" are George Mainas and Avraham Zimmerman, who attended the California meetings at which Wood allegedly made the fraudulent representations to Marshall. Mainas is a California resident and could be compelled to testify in a California court. Zimmerman is a resident of Israel. Zimmerman submitted a declaration to the district court stating that he would not testify in Slovakia, out of fear for his physical safety, but that he would travel to California to testify voluntarily in this case.

Marshall also lists other key witnesses: (1) representatives of the United States and Israeli corporations involved in the Joint Venture, who are believed to be located in Colorado or Israel; (2) Stuart Rogers, a board member of GCS, who Marshall believes has knowledge of the misrepresentations made by Wood, has knowledge of the "true nature" of the Bulgarian Venture, and who "lives somewhere in Western Canada or the Western United States"; (3) Christopher Ashby, a Deloitte employee who is alleged to have witnessed discussions regarding the Bulgarian cable companies, to have assisted in

drafting the Deloitte Valuation, to have knowledge of Deloitte's role in the contemplated transactions and Wood's representations regarding the same, and who is believed to reside in California; and (4) George Miklas, a California resident whom Marshall says has knowledge of actions taken by GCS and Wood during the parties' course of dealing with Marshall.

For his part, Wood argues that at least fifteen witnesses who had either knowledge of the Bulgarian Venture or knowledge of Wood's character are located in Slovakia or "other nearby Central European countries."

The district court held that, because both sides "would be required to rely on procedures under the Hague Convention to obtain evidence" from at least some witnesses, and because "both sides would benefit from live testimony that would enable a factfinder to evaluate [witnesses'] demeanor," this private interest factor did not favor either party. The court also concluded that, because there was insufficient evidence regarding lodging and travel costs related to the two forums and because some witnesses would need to travel to court in either forum, the factor of the cost of bringing witnesses to trial was also neutral. The district court acknowledged that it had difficulty with this analysis, however, given that the parties provided much information that was either hearsay or insufficient to allow the court to understand fully why the various witnesses were important to the case.

The district court properly considered both the sources of proof that the plaintiff intended to use to present his case, and the proof that the defendant intended to use to defend himself. *See Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 769-70 (9th Cir. 1991). The district court also appropriately pointed out that, in the context of allegations of fraud, it is particularly "desirable that the factfinder have the benefit of demeanor testimony of witnesses." *Id.* at 770, *quoting Fustok v. Banque Populaire Suisse*, 546 F. Supp. 506, 511

(S.D.N.Y. 1982). Nevertheless, we have cautioned that the focus for this private interest analysis "should not rest on the number of witnesses . . . in each locale" but rather the court "should evaluate the materiality and importance of the antici-pated . . . witnesses' testimony and then determine their accessibility and convenience to the forum." *Lueck*, 236 F.3d at 1146 (internal quotation marks, citations and alteration omitted).

The record reflects that Marshall explained with specificity how several of the witnesses who could testify in California were important to his claims against Wood, and which wit-nesses were most vital to his case. In contrast, Wood argued, in conclusory fashion, that the various Slovakia- or Europe-based witnesses "worked with and under him . . . on the pro-fessional engagements for [GCS]," "understood the relation-ship between him and Marshall," and "could help defend his professional, reputation for honesty, and character," without explaining who these witnesses were or what information each would have. Wood's declaration in support of the 2003 motion to dismiss on forum non conveniens grounds speaks to the witnesses "*identified by plaintiffs* in *their* Initial Disclo-sures . . . and information that *plaintiffs* allege the witnesses possess" (emphasis added), but sheds no further light on the relative importance of various witnesses to his defense. Simi-larly, Wood's supplemental disclosures, filed in April 2008, listed witnesses with a general statement that they were "ex-pected to have relevant knowledge and information" regard-ing a long list of topics, but these disclosures failed to specify which witnesses would testify as to each topic.

**[8]** This is a case in which witnesses are scattered around the globe. Whether the case is tried in Slovakia or California, both parties will likely be forced to depend on deposition tes-timony in lieu of live testimony for at least some witnesses. Wood, in asking for the extraordinary measure of dismissal on forum non conveniens grounds, needed to provide not simply the numbers of witnesses in each locale, but information suffi-

cient to assist the court in assessing the "materiality and importance" of each witness. *Lueck*, 236 F.3d at 1146; *see also Gates Learjet Corp.*, 743 F.2d at 1335. A defendant need not specify in great detail the contents of each witness's testimony, but "must provide enough information to enable the District Court to balance the parties' interests." *Piper Aircraft*, 454 U.S. at 258. Here, the district court abused its discretion in holding that this private interest factor was neutral when Wood provided very little information that would have enabled the district court to understand why various witnesses were material to his defense. Moreover, although Wood stressed the need to present witnesses who worked on the Deloitte Valuation, his counsel acknowledged at oral argument that Marshall's fraud claims relating to the Deloitte Valuation are only one theory of fraud in this case. Marshall alleges fraud based not only on documents allegedly prepared by Deloitte, but also on Wood's alleged oral representations to Marshall on a wide variety of topics. On balance, the private interest factors relating to witnesses weigh against dismissal.

**[9]** Neither party has argued that there would be any problem enforcing a judgment in either forum, and thus the district court properly concluded that the sixth public interest factor was neutral.

**[10]** Finally, we consider any other "practical problems that make trial of a case easy, expeditious and inexpensive." Wood asserts that "[m]any, but by no means all, of the documents regarding the [GCS] venture into Bulgarian cable systems . . . were written in English." He stated in a declaration that "many other" relevant documents were not in English, including "[m]any records issued or maintained by the Deloitte Slovakia office," "[d]ocuments regarding the cable licenses," and "correspondence with potential lenders," which were in Slovak, Bulgarian, or Dutch and would therefore need to be translated if the case were to proceed in an American court. However, it is equally true that the numerous docu-

ments in languages other than Slovak would need to be translated for a Slovakian court. Similarly, evidence was before the district court that many potential witnesses were fluent in English, but some were fluent in Slovak. Thus, the district court properly concluded that the inconvenience and costs of translation for live witness testimony would likely affect both parties in either forum.

The district court ultimately held, however, that this final private interest factor favored dismissal because Marshall initially sought "to hold the Deloitte Defendants' [sic] liable for fraud on the theory that Wood was acting as their agent" and Marshall "did not back off this theory at the hearing on this matter," even though the Deloitte entities had been dismissed for lack of personal jurisdiction. The district court accepted Wood's argument that this meant it would be "impossible to resolve all of the issues in this case unless the case were tried in the Slovak Republic, where those defendants are subject to jurisdiction."

[11] It is true that "the inability to implead potential third-party defendants" can be a factor weighing in favor of dismissal in a forum non conveniens analysis. *Piper Aircraft*, 454 U.S. at 259. As the Supreme Court observed there, if the defendants

> can show that the accident [giving rise to the plaintiffs' claims] was caused not by a design defect, but rather by the negligence of the pilot, the plane's owners, or the charter company, they will be relieved of all liability. It is true, of course, that if [the defendants] were found liable after a trial in the United States, they could institute an action for indemnity or contribution against these parties in Scotland. It would be far more convenient, however, to resolve all claims in one trial.

*Id.*; *see also Contact Lumber*, 918 F.2d at 1452 (holding that "the inability to implead other parties *directly involved* in the

controversy is a factor which weighs against the retention of jurisdiction") (internal quotation marks, citations and alteration omitted). Nevertheless, the fact that Wood may be unable to implead alleged joint tortfeasors in California is by no means determinative of the forum non conveniens inquiry; it is only one consideration weighing in favor of dismissal, but all of the other private interest factors are either neutral or weigh against dismissal.

## V.

**[12]** We turn now to the five public interest factors: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Tuazon*, 433 F.3d at 1181, citing *Lueck*, 236 F.3d at 1147.

In this case, the district court held that the second, third and fourth factors were neutral, and Marshall expressly conceded that the district court did not abuse its discretion in so concluding. Thus, we examine only the remaining two factors, which the district court held favored dismissal.

The district court held that the connection between the parties' dispute and California was "attenuated." Although Marshall alleges that two meetings regarding his investment were held in California, the court concluded that neither meeting added any "unique statement or contribution to the overall scheme" alleged to have caused Marshall's injuries, because the representations made at those meetings had already been made to Marshall in other locations. Moreover, the district court emphasized that this case "concerns a venture to be carried out entirely in Europe, concerning the acquisition of Bulgarian cable television licenses, with financing by a Slovakian bank for a joint venture consisting of Canadian, Israeli and non-California-based United States companies." Thus, the district court held that the first public interest factor, local

interest in the suit, weighed in favor of dismissal. The district court also held that, given that the case promised to be expensive to litigate, the final public interest factor, the costs of resolving a dispute unrelated to a particular forum, also weighed in favor of dismissal.

**[13]** We need not hold, as Marshall urges, that "California is the principal locus" of the case or that California "has more of an interest than any other jurisdiction" in order to conclude that California has a meaningful interest in this litigation. "[W]ith this [public] interest factor, we ask only if there is an identifiable local interest in the controversy, not whether another forum also has an interest." *Tuazon*, 433 F.3d at 1182. Although Wood allegedly made misrepresentations both before and after the two meetings in San Francisco, he also allegedly made these representations at the San Francisco meetings. Further, Marshall alleges that it was in San Francisco that he finally agreed to invest in the ill-fated Bulgarian Venture. We do not suggest that California's interest in this controversy must somehow be unique or not shared with any other forum. Marshall's claims are rooted in a course of conduct that took place over several years and in multiple locations around the globe, including California. California has an "interest in preventing fraud from taking place within its borders" that is at least as strong as Slovakia's interest in this case. The district court abused its discretion in holding that no "identifiable local interest [exists] in this lawsuit." *Compare Vivendi SA v. T-Mobile USA Inc.*, ___ F.3d ___, 2009 WL 3525855 at *4 (9th Cir. Nov. 2, 2009) (holding that the local interest in the case was "tenuous" where the only asserted connection to the United States was the use of "U.S. wires" in various communications between the parties).

## VI.

**[14]** In sum, the district court did not hold Wood to his burden of making "a clear showing of facts which establish such oppression and vexation of a defendant as to be out of propor-

tion to plaintiff's convenience." *Ravelo Monegro*, 211 F.3d at 514 (internal quotation marks, citations and alterations omitted). All but one of the private and public interest factors were either neutral or weighed against dismissal. The doctrine of forum non conveniens is "an exceptional tool to be employed sparingly," *id.*, and the district court abused its discretion in concluding that this was a proper case for application of that doctrine.

**REVERSED AND REMANDED.**