

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>ORLAND LTD.; VANDEVCO LIMITED,<br>　　　　　Debtors. | BAP No. WW-21-1176-BSG<br>　　　WW-21-1200-BSG<br>　　　(Related Appeals) |
| CERNER MIDDLE EAST LIMITED,<br>　　　　　Appellant,<br>v.<br>BELBADI ENTERPRISES, LLC; ORLAND<br>LTD.; VANDEVCO LIMITED,<br>　　　　　Appellees. | Bk. No.  20-42710-MJH<br><br>Adv. Nos. 20-04077-MJH<br>　　　　20-04001-MJH<br><br>**MEMORANDUM***  |

Appeal from the United States Bankruptcy Court
for the Western District of Washington
Mary Jo Heston, Bankruptcy Judge, Presiding

Before: BRAND, SPRAKER, and GAN, Bankruptcy Judges.

## INTRODUCTION

Plaintiff and creditor Cerner Middle East Limited ("Cerner") appeals

orders dismissing related adversary proceedings on forum non conveniens

grounds. The bankruptcy court ruled that the United Arab Emirates ("UAE")

---

* This disposition is not appropriate for publication. Although it may be cited for
whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value,
*see* 9th Cir. BAP Rule 8024-1.

was an adequate alternative forum and that the balance of private and public interest factors weighed in favor of dismissal. Seeing no abuse of discretion by the bankruptcy court, we AFFIRM.[1]

## FACTS

### A. Prepetition events

Cerner is a Cayman Island company with its principal place of business in Kansas City, Missouri. Cerner is a subsidiary of Cerner Corporation, a medical services technology company, and operates in the Middle East and Africa. The defendants are entities owned or controlled by Mr. Almed Saeed Al Badi Al Dhaheri. Mr. Dhaheri is a citizen and domiciliary of the UAE and is the sole member of defendant Belbadi Enterprises, LLC ("Belbadi LLC"), a UAE limited liability company with its principal place of business in Abu Dhabi, UAE. Belbadi LLC is the sole member of Belbadi Engineering, LLC, a UAE limited liability company. Willamette Enterprises, Ltd. ("Willamette") is an exempted Cayman Island company co-owned by Belbadi Engineering, LLC (99%) and Mr. Ziad A. Elhindi (1%). Willamette is the holding company for debtor-defendant Vandevco Limited ("Vandevco") and debtor-defendant Orland Ltd. ("Orland").

---

[1] On February 25, 2022, after oral argument, Cerner filed what it contends is a Notice of Supplemental Authorities under Rule 8014(f). The materials submitted by Cerner are not an appropriate use of the rule. Cerner's notice offers no new authorities, but rather seeks to supplement the record with new evidence of a recently-filed examiner's report, various declarations, and deposition transcripts. Rule 8014(f), which is virtually identical to Fed. R. App. P. 28(j), "permits a party to bring new *authorities* to the attention of the court; it is not designed to bring new evidence through the back door." *Manley v. Rowley*, 847 F.3d 705, 710 n.2 (9th Cir. 2017) (quoting *Trans-Sterling, Inc. v. Bible*, 804 F.2d 525, 528 (9th Cir. 1986) (emphasis in original)). Accordingly, we decline to consider Cerner's February 25 filing. For the same reason, we also decline to consider the response from Vandevco Limited and

2

Vandevco is a Washington corporation which owns, through other entities, the Vancouver Center, a mixed residential commercial development in Vancouver, Washington. Orland is an Oregon corporation and was formed for the purpose of real estate ownership and development. Orland owns some acreage and rental homes in Tigard, Oregon.

In 2008, the UAE Ministry of Health awarded iCapital S/E ("iCapital")—a sole proprietorship owned by Mr. Dhaheri—a contract to develop medical information software for use by hospitals in the UAE. Cerner entered into a $94 million contract with iCapital wherein Cerner would provide hardware, software, and related services for the UAE project.

After iCapital defaulted on its payment obligations under the contract, Cerner commenced its first arbitration proceeding against iCapital and Mr. Dhaheri in Paris, France. Before an answer was filed, Cerner and iCapital executed a settlement agreement. In connection with the settlement, Belbadi LLC, a stranger to the parties' contract, executed two agreements to guarantee the obligations of iCapital (the "Guarantees"). The Guarantees were drafted in both English and Arabic by Cerner's attorneys in the UAE. Two provisions from the Guarantees are relevant here:

> Section 1(g)(ii): The Guarantor (Belbadi LLC) authorizes the Beneficiary (Cerner) without notice of demand and without affecting Guarantor's liability hereunder, from time to time to: take and hold security for the payment of this Guarantee or the Guaranteed Obligations, and exchange, enforce, waive or release any such security or any part thereof, and apply such security and

---

Orland Ltd. filed on March 21, 2022.

direct the order or manner of sale thereof as the Beneficiary in its sole and absolute discretion may determine.

. . .

Section 7(b): Governing Law; Jurisdiction.

(i)     This Guarantee shall be governed by, and construed and enforced in accordance with, the laws of the Emirate of Abu Dhabi and the federal laws of the United Arab Emirates, without giving effect to the conflict of law rules thereof.

(ii)    Each party hereby expressly consents to the jurisdiction of a competent court in the Emirate of Abu Dhabi for the adjudication of any dispute relating to, or arising under, this Guarantee.[2]

When iCapital defaulted on the settlement agreement, Cerner filed a second arbitration proceeding against iCapital and Mr. Dhaheri in Paris, France. Cerner was awarded approximately $62 million (U.S. dollars) jointly and severally against iCapital and Mr. Dhaheri. Cerner has received nothing under the arbitration award or the Guarantees.

In 2016, Cerner filed two complaints in the United States to enforce the Guarantees: one against Vandevco and Belbadi LLC in the Washington state court (the "Washington Litigation"); the other against Orland and Belbadi LLC in the Oregon state court (the "Oregon Litigation"). The complaints were similar with respect to the underlying facts and allegations and both sought entry of a judgment against Belbadi LLC for the amounts owing under the Guarantees and attachment of the Vandevco and Orland shares as security for payment. In

---

[2] The Arabic version of the Guarantees provided for "exclusive" jurisdiction in the UAE, while the English version provided only for a consent to UAE jurisdiction. In any case,

short, Cerner alleged that Belbadi LLC breached the Guarantees and that Vandevco and Orland, as the alter egos of Belbadi LLC, were equally liable for the debt. Through a prejudgment writ of attachment, Cerner sought to enforce its right to "take and hold" Belbadi LLC's beneficial ownership interest in the Vandevco and Orland shares, which are owned by Willamette and held in the Cayman Islands.

Four years elapsed between the filing of the state court complaints and Vandevco and Orland's chapter 11[3] filings and the removal of the Washington Litigation and the Oregon Litigation to the bankruptcy court. During that time, Cerner, Belbadi LLC, Vandevco, and Orland litigated matters in the two state courts, the district courts for the District of Oregon and the Western District of Washington, the Ninth Circuit Court of Appeals, and the Oregon Court of Appeals. Despite the vast amount of litigation, things never progressed past the jurisdictional stage in either case.

The crux of the parties' unresolved dispute in both cases was whether the state court had personal jurisdiction over Belbadi LLC. In the Washington Litigation, Cerner argued that the state court had personal jurisdiction over Belbadi LLC on the theory of *quasi in rem* jurisdiction due to its investments in the Vancouver Center, and because Vandevco was Belbadi LLC's alter ego. The Washington state court ordered an evidentiary hearing for Cerner to establish the *quasi in rem* jurisdiction and alter ego issues. Cerner began but was unable to

at minimum, Cerner consented to the UAE courts to resolve any dispute over the Guarantees.

[3] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy

conclude that hearing due to Vandevco's bankruptcy filing. In the Oregon Litigation, the Oregon Court of Appeals held that the trial court had personal jurisdiction over Belbadi LLC to the extent that it and Orland were alter egos. However, nothing progressed at the trial court on remand due to Orland's chapter 11 filing three weeks later.

There has also been litigation in the UAE. Cerner prevailed against Belbadi LLC in at least one civil action where Belbadi LLC challenged the Guarantees on various grounds, including claims that the statute of limitations had expired and that they were not enforceable under UAE law. The UAE trial court dismissed the suit on the merits and ordered Belbadi LLC to pay Cerner's attorney's fees and costs. The UAE appellate court affirmed that decision.

**B.** **The bankruptcy filings, removals of the state court litigation, and motions to dismiss for forum non conveniens.**

On December 6, 2020, Vandevco and Orland each filed a chapter 11 bankruptcy case in the Western District of Washington. The cases were later ordered jointly administered. Cerner filed an $87,875,514.65 unsecured proof of claim in each case. The supporting documents to Cerner's claims alleged that Vandevco and Orland were directly liable to Cerner because they were the alter egos of Belbadi LLC. Vandevco and Orland objected to the claims.

After Vandevco, Orland, and Belbadi LLC (collectively, "Defendants") removed both the Washington Litigation and the Oregon Litigation to the bankruptcy court (together, the "Adversary Proceedings"), Cerner moved for remand. The bankruptcy court denied remand, finding that it would be more

Procedure.

efficient for Cerner's claims to be litigated in the bankruptcy court, which had jurisdiction to administer Cerner's claims and exclusive control over the debtors' assets. Cerner did not appeal the remand orders.

Defendants then moved to dismiss the Adversary Proceedings on forum non conveniens grounds.[4] They argued that Cerner's claims against Belbadi LLC for breach of the Guarantees were wholly separate contractual claims from its alter ego claims against Vandevco and Orland. Defendants argued that dismissing the Adversary Proceedings would have no impact on Cerner's ability to advance its claims against Vandevco or Orland, and would not prejudice Cerner's rights to pursue Belbadi LLC in the UAE. If Cerner was successful in its "outside reverse veil piercing" claim and established an alter ego relationship between Belbadi LLC and Vandevco or Orland, argued Defendants, Cerner's claim would be treated under the debtors' proposed plan of reorganization.

Defendants argued that a UAE court could fairly adjudicate the contract dispute between Cerner and Belbadi LLC and was the better forum because: (1) the Guarantees were drafted, executed, and performed in the UAE and were subject to UAE law; (2) the dispute related solely to events that occurred in the UAE; (3) the parties consented to UAE jurisdiction in the event of a dispute; and (4) the pertinent documents, parties, and witnesses—including the attorneys who drafted and negotiated the Guarantees — were located in the UAE.

---

[4] The dismissal motions were filed at different times and decided by the bankruptcy court one month apart. However, since the motions were decided on identical grounds, we discuss them as though they were filed and decided together.

Defendants noted that many of the witnesses could not be compelled to appear in the United States, and even if they could, Arabic translators would be necessary for testimony and for interpreting documents written in Arabic. In addition, noted Defendants, any UAE judgment would be enforceable there (and elsewhere if Cerner followed legal and procedural requirements), and Belbadi LLC had assets in the UAE which Cerner could look to after it established liability under the Guarantees.

Cerner opposed the motions to dismiss, arguing that Defendants had failed to establish that the UAE was an adequate alternative forum, or that the private and public interest factors weighed in favor of the UAE. Cerner argued that the UAE was not an available forum because a UAE court could not hear the entire case and not all of the parties were subject to UAE jurisdiction. Cerner argued that UAE courts lacked jurisdiction over the Vandevco and Orland estates and had no authority to enter an order attaching Belbadi LLC's assets in Washington or Oregon. Because its action sought attachment to "take and hold security" in Belbadi LLC's beneficial ownership interest in the Vandevco and Orland shares, argued Cerner, suit in the UAE would deprive it of the benefit of its bargain and result in an inadequate forum. Cerner maintained that the parties understood that certain Belbadi LLC assets, including the Vancouver Center, were put up as security for payment under the Guarantees.

In addition, argued Cerner, the private and public interest factors did not weigh in favor of dismissal. Aside from Mr. Dhaheri, argued Cerner, many of the relevant witnesses were in the United States, including the two witnesses who negotiated the Guarantees—Mr. Greg White, Cerner's former Vice

President and General Manager, and Mr. Elhindi. Further, argued Cerner, no witness testimony required translation because all of the witnesses spoke English fluently, and essential documents for the Vancouver Center were located in Washington. Cerner argued that the states of Washington and Oregon had an interest in a case involving a foreign company's attempt to evade a creditor headquartered in the U.S. through the use of sham, alter ego Washington and Oregon corporations. More importantly, argued Cerner, part of the dispute involved the Vancouver Center, which was one of the largest real estate development projects in Vancouver's history. Lastly, argued Cerner, Defendants had not shown that the bankruptcy court would have difficulty in applying UAE law, which Cerner maintained was similar to Washington law, to the Guarantees.

In reply, Defendants disputed Cerner's argument that the UAE was not an available forum. According to Defendants, Belbadi LLC did not own nor has it ever owned real property in Oregon or Washington, including the Vancouver Center, and it was never the parties' understanding that the Vancouver Center, or any other specific asset, was part of the security put up for payment of the Guarantees. In justifying its position that Washington was the better forum, argued Defendants, Cerner was conflating its collection action against Vandevco and Orland with its liability suit against Belbadi LLC. Rather than establishing liability against the party to its contract and then collecting judgment, argued Defendants, Cerner was skipping steps and jumping straight to pursuing Vandevco and Orland—Belbadi LLC's thrice-removed subsidiaries. But this theory was flawed. Belbadi LLC was the only necessary party to

9

adjudicating liability under the Guarantees; neither Vandevco nor Orland was a party to them, and neither had ever done business with Cerner or had anything to do with the underlying contracts. Their only possible connection was as a source of payment. Any direct claim Cerner had against Vandevco or Orland, argued Defendants, was already the subject of the claim proceedings. And any post-judgment collection efforts by Cerner, if it prevailed against Belbadi LLC in the UAE, could be carried out in the United States using standard domestication procedure.

The bankruptcy court issued a Memorandum Decision and Orders granting the motions to dismiss the Adversary Proceedings on forum non conveniens grounds. *Cerner Middle East Ltd. v. Belbadi Enters., LLC (In re Vandevco Ltd.)*, 632 B.R. 790 (Bankr. W.D. Wash. 2021). Dismissal was conditioned on Belbadi LLC agreeing to submit to UAE jurisdiction and to waive any statute of limitations or jurisdictional defenses. These timely appeals followed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(c)(2). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court abuse its discretion in dismissing the Adversary Proceedings on forum non conveniens grounds?

## STANDARD OF REVIEW

Our review of the bankruptcy court's dismissal of the Adversary Proceedings on forum non conveniens grounds is highly deferential and we

10

will reverse only if there has been a clear abuse of discretion. *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 693-94 (9th Cir. 2009); *see also Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)). In the context of forum non conveniens, the bankruptcy court abuses its discretion if it relies on an erroneous view of the law, relies on a clearly erroneous assessment of the evidence, or strikes an unreasonable balance of relevant factors. *Carijano*, 643 F.3d at 1224.

## DISCUSSION

**A.    The bankruptcy court did not abuse its discretion in dismissing the Adversary Proceedings on forum non conveniens grounds.**

"A federal court has discretion to dismiss a case on the ground of forum non conveniens when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (cleaned up); *see also Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001) (a federal court may decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties). Dismissal for forum non conveniens is generally only appropriate when the more convenient forum is in a foreign country. *Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994).

However, forum non conveniens is "an exceptional tool to be employed sparingly, and not a doctrine that compels plaintiffs to choose the optimal

11

forum for their claim." *Carijano*, 643 F.3d at 1224 (cleaned up). In dismissing an action on forum non conveniens grounds, the court must consider (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal. *Id.*

"A defendant invoking forum non conveniens ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem*, 549 U.S. at 430. However, "the presumption in the plaintiff's favor 'applies with less force'" when the plaintiff is foreign, "for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'" *Id.* (quoting *Piper Aircraft Co.*, 454 U.S. at 255-56).

### 1.    Adequate alternative forum

The first requirement for a dismissal on forum non conveniens grounds is that an adequate alternative forum is available to the plaintiff. *Lueck*, 236 F.3d at 1143. Availability of an alternative forum "ordinarily exists when defendants are amenable to service of process in the foreign forum and when the entire case and all parties can come within the jurisdiction of that forum." *Gutierrez v. Advanced Med. Optics, Inc.*, 640 F.3d 1025, 1029 (9th Cir. 2011) (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (internal quotation marks omitted)). An alternative forum is adequate "when it provides the plaintiff with a sufficient remedy for his wrong." *Dole Food Co.*, 303 F.3d at 1118. "[T]ypically, a forum will be inadequate only where the remedy provided is so clearly inadequate or unsatisfactory, that it is no remedy at all." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006) (citations and quotation marks omitted).

12

First, the bankruptcy court determined that the alternative forum of the UAE was available. It began by observing that the bankruptcy filings had changed the landscape of the parties' dispute. Cerner's core claim asserted in the complaints was for breach of contract to establish Belbadi LLC's liability on the Guarantees. Vandevco and Orland were not necessary parties to that dispute. Their only possible connection to Cerner was as a source of payment if Cerner established that Belbadi LLC breached the Guarantees and if Cerner established that Vandevco and Orland, as alter egos of Belbadi LLC, were liable for Belbadi LLC's debts. Although Vandevco and Orland were not subject to UAE jurisdiction, they were subject to the exclusive jurisdiction of the bankruptcy court, and any direct relief Cerner was seeking against either debtor's estate in the adversary proceedings could be awarded by the bankruptcy court in the claim proceedings, and without the need for entry of a judgment on the Guarantees. Therefore, although the bankruptcy court said it was not technically "severing" Cerner's claims against Vandevco and Orland, it observed that the parallel proceedings available to Cerner in the bankruptcy court had the same effect. Thus, under the unique facts of the case, the court concluded that the UAE was an available forum with jurisdiction over the necessary parties—i.e., Cerner and Belbadi LLC—and the breach of contract dispute.

The bankruptcy court also determined that the alternative forum of the UAE was adequate. It found that nothing in the record supported a finding that the UAE would completely deprive Cerner of any remedy or result in unfair treatment. It rejected as a red herring Cerner's argument that the UAE was not

an available or adequate forum because UAE courts will not order attachment of property outside the UAE. The court noted that most jurisdictions, including the United States, will not issue attachment orders outside of their territorial jurisdiction. In any case, noted the court, such remedies would be available if Cerner obtains a judgment in the UAE and domesticates it within the United States. In addition, the bankruptcy claims process provided Cerner with a remedy if liability on the Guarantees was established.

Cerner argues that the bankruptcy court erred in determining that the UAE was an available or adequate forum because (1) UAE courts are unable to order specific performance to take security over Belbadi LLC's assets in the United States, which is Cerner's third claim for relief and which it contends the bankruptcy court ignored, and (2) not all of the claims and defendants could come within its jurisdiction. As for Cerner's first argument, we reject it for the same reasons as did the bankruptcy court. A UAE court's inability to order specific performance to take security over Belbadi LLC's assets in the United States, which may not exist anyway, does not render that forum inadequate. *See Lueck*, 236 F.3d at 1143 (the foreign forum need only provide the plaintiff with "some remedy" for the wrong at issue for the alternative forum to be adequate). Cerner inexplicably continues to disregard that it is free to obtain a judgment against Belbadi LLC in the UAE and exercise collection procedures there against whatever assets are within the court's jurisdiction, or to domesticate any such judgment in the United States and proceed accordingly. Further, Cerner's purported "claim" of specific performance is not a standalone claim for relief; it is an equitable remedy used to compensate a contractual party when a damages

award may be inadequate. *See e.g., Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. v. Cal.*, 813 F.3d 1155, 1167 (9th Cir. 2015) ("Specific performance is a remedy associated with breach of contract.") (citing the Restatement (Second) of Contracts § 357; 81A C.J.S. Specific Performance § 4 (2015) ("[A] cause for specific performance ordinarily cannot lie until there has been a breach of the contract.")).

We also reject Cerner's second argument. Forum non conveniens is a flexible rather than an all-or-nothing doctrine. *See Piper Aircraft Co.*, 454 U.S. at 249-50. "Depending upon the facts of the particular case, a district court may dismiss part of a lawsuit [on the basis of forum non conveniens] while deciding the merits of other issues." *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1234-35 (2d Cir. 1996) (allowing the district court to retain a contempt claim and dismiss other claims on forum non conveniens grounds); *see Su v. M/V S. Aster*, 978 F.2d 462, 472 (9th Cir. 1992) (dismissal of some claims on the merits and the remainder on forum non conveniens grounds); *see also Allarcom Pay Television, Ltd. v. Home Box Office, Inc.*, 210 F.3d 381 (9th Cir. 2000) (table) (citing *Scottish Air* and *Su* and holding that the district court's decision to dismiss part of the suit on forum non conveniens grounds and to dismiss remaining claims on the merits was not an abuse of discretion).

Vandevco and Orland are not necessary parties to the breach of contract dispute. Because Cerner may obtain the same relief requested in the complaints against Vandevco and Orland through the claims process, dismissal of the Adversary Proceedings effectively dismissed only defendant Belbadi LLC and the breach of contract claim. The bankruptcy court had the authority to dismiss

15

defendant Belbadi LLC and the breach of contract claim, yet retain the alter ego claims against defendants Vandevco and Orland. *See Scottish Air Int'l, Inc.,* 81 F.3d at 1234-35; *Su*, 978 F.2d at 472.

Cerner cites *Gutierrez* and *Dole Food Co.* to argue that a foreign forum is available only when the entire case and all parties can come within its jurisdiction, and because that was not the case here, the bankruptcy court erred in finding that the UAE forum was available. We do not view these cases as so limiting. *Gutierrez*, citing *Dole Food Co.*, held that availability of an alternative forum "ordinarily" exists when defendants are amenable to service of process in the foreign forum and the entire case and all parties can come within the forum's jurisdiction. 640 F.3d at 1029 (citing *Dole Food Co.*, 303 F.3d at 1118). We believe the Circuit panel's use of the word "ordinarily" left intact a court's discretion, in the proper circumstances, to retain some claims yet dismiss others on forum non conveniens grounds. This is consistent with the flexibility the U.S. Supreme Court has held the doctrine requires. *See Van Cauwenberghe v. Biard,* 486 U.S. 517, 529 (1988) ("As we previously have recognized, the district court is accorded substantial flexibility in evaluating a forum non conveniens motion."); *Piper Aircraft Co.*, 454 U.S. at 249 (underscoring that the Court has "repeatedly emphasized the need to retain flexibility").

*Gutierrez* and *Dole Food Co.* are also distinguishable. In neither case did the Circuit panel reverse the district court for dismissing part of a lawsuit rather than the entire case. *See Gutierrez*, 640 F.3d at 1029-31 (vacating district court's proper dismissal on forum non conveniens grounds because later developments showed that the foreign forum was not available because the Mexican court

declined to accept jurisdiction); *Dole Food Co.*, 303 F.3d at 1118 (reversing dismissal because, among other things, only one of two defendants consented to jurisdiction in the alternative forum).

Thus, Defendants had to prove only that the UAE was an adequate alternate forum for Belbadi LLC. They did so. Belbadi LLC is amenable to service of process in the UAE, and the UAE has jurisdiction over Belbadi LLC (and Cerner) and the breach of contract claim. Indeed, Cerner and Belbadi LLC have already been litigating aspects of this dispute there. Accordingly, the bankruptcy court did not abuse its discretion in determining that the UAE was an adequate alternative forum.

### 2. The balance of private and public interest factors

Even when an adequate alternative forum exists, the court will not disturb the plaintiff's choice of forum unless the "private interest" and the "public interest" factors strongly favor dismissal. *Tuazon*, 433 F.3d at 1180 (citing *Lueck*, 236 F.3d at 1146). While the "private interest factors" affect the convenience of the litigants, the "public interest factors" affect the convenience of the forum. *Piper Aircraft Co.*, 454 U.S. at 241. We turn now to our review of the bankruptcy court's balancing of these factors.

#### a. Private interest factors

Factors relating to the private interests of the litigants include: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other

practical problems that make trial of a case easy, expeditious and inexpensive." *Boston Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1206-07 (9th Cir. 2009) (quoting *Lueck*, 236 F.3d at 1145). The court "should look to any or all of the above factors which are relevant to the case before it, giving appropriate weight to each. It should consider them together in arriving at a balanced conclusion." *Lueck*, 236 F.3d at 1145-46 (citations omitted).

In carefully considering all seven factors, the bankruptcy court found that each weighed in favor of the UAE forum. Cerner argues that the bankruptcy court misapplied these factors and should have found that all of them favored resolving the Adversary Proceedings in Washington and Oregon. Cerner appears to be contending that even the bankruptcy court is not the proper forum. However, Cerner did not appeal the orders denying remand. In any event, we conclude that the bankruptcy court did not misapply any of the private interest factors.

As for the first factor—residence of the parties and witnesses—the bankruptcy court found that this factor weighed heavily in favor of the UAE forum: (1) Cerner is a Cayman Island company, Belbadi LLC is a UAE company, and both companies operate primarily or exclusively in the Middle East; (2) the law firms used by both parties to negotiate and draft the Guarantees are located in the Middle East, and the witnesses with personal knowledge of negotiating and drafting the Guarantees are in the UAE, where the negotiations occurred; and (3) Mr. Dhaheri, a key witness, is in the UAE. While Cerner argued that many of the relevant witnesses besides Mr. Dhaheri were in the United States, the bankruptcy court found that Cerner had not

shown that such witnesses, with the exception of Mr. White and Mr. Elhindi, had any personal knowledge about the dispute between Cerner and Belbadi LLC under the Guarantees (which neither Vandevco nor Orland was a party to) or the underlying settlement agreement. The testimony of these purported witnesses was, if anything, relevant to Cerner's collection action against Vandevco and Orland.

Cerner argues that the bankruptcy court abused its discretion by minimizing the relevance of Vandevco and Orland to the Adversary Proceedings and the testimony of the witnesses to the claims in the complaint— namely, that Cerner be allowed to "take and hold" Belbadi LLC's assets as security under the Guarantees, including its beneficial ownership interest in the Vandevco and Orland shares. We disagree. As we stated above, Vandevco and Orland are not necessary parties to any action to determine Belbadi LLC's liability to Cerner under the Guarantees. Further, the Vancouver Center, which is what Cerner really wants, is not an asset of Belbadi LLC but rather of the Vandevco estate. The only way the assets of Vandevco or Orland will become subject to Cerner's claims is if Cerner can show that the two entities are Belbadi LLC's alter egos. Cerner will have the opportunity to elicit testimony from the alter ego witnesses in the claim proceedings. Of course, a successful alter ego ruling is meaningless if Cerner fails to obtain a judgment against Belbadi LLC for breach of the Guarantees.

Next, since the majority of the material witnesses to the Guarantees and underlying contracts were in the UAE, the bankruptcy court found that the UAE was the more convenient forum to litigate the dispute between Cerner and

Belbadi LLC. Cerner argues that the bankruptcy court abused its discretion in deciding this second factor because it was based on its erroneous analysis of the first factor. However, because the court's analysis of the first factor was not erroneous, neither was its decision as to the second factor.

As with the material witnesses to the Guarantees and underlying contracts, the bankruptcy court found that the documents pertinent to these matters were located primarily in the UAE. Thus, it found that the third factor—access to evidence—weighed in favor of the UAE forum. Cerner continues to argue that many of the relevant documents are located in the United States. However, as the bankruptcy court correctly found, the documents which Cerner references are not relevant to Cerner and Belbadi LLC's breach of contract dispute. Rather, they are relevant only to the alter ego issue and can be used by Cerner in the claim proceedings.

Respecting the fourth factor—whether unwilling witnesses can be compelled to testify—the bankruptcy court noted that Cerner has spent years trying to establish personal jurisdiction over Belbadi LLC and Mr. Dhaheri, a key witness, in domestic federal and state courts with little success. However, the UAE has jurisdiction over the contractual dispute and the parties, and most of the relevant fact witnesses are in the UAE. The court opined that it was "extremely unlikely" to compel Mr. Dhaheri and the other witnesses to appear or testify as was evidenced by Cerner's prior failed attempts to depose Mr. Dhaheri or compel his appearance in the United States. On the other hand, a UAE court could compel the appearance of these witnesses.

We reject Cerner's argument that the bankruptcy court's reliance on the location of the witnesses as the UAE was an abuse of discretion because Mr. White and Mr. Elhindi live in the United States. While these two witnesses may be material to the contractual dispute involving iCapital, Cerner, and Belbadi LLC, they are only two of many material witnesses potentially testifying in the matter; most of the material witnesses live in the UAE. Cerner also argues that the bankruptcy court was wrong to speculate that a UAE court could compel the appearance of Mr. White and Mr. Elhindi. The bankruptcy court made no such speculation. It observed only that a UAE court could compel the appearance of witnesses who live in and are citizens of the UAE. Moreover, Cerner's argument, even if true, makes little sense as to Mr. White; he is a witness for Cerner and his appearance would not need to be compelled.

As for the fifth factor—the cost of bringing witnesses to trial—the bankruptcy court found that, even if it could compel foreign citizens to appear before it, the cost to bring them to Washington to testify would be prohibitive. There was also the ongoing pandemic to consider and its impact on global travel. Cerner argues that the cost of bringing witnesses to trial weighs heavily in favor of the bankruptcy court because nearly all of the relevant witnesses would be traveling within the United States. This assumes, however, that the witnesses Cerner speaks of are relevant to the contractual dispute between Cerner and Belbadi LLC. We have already concluded that they are not. Those that are, with the exception of Mr. White and Mr. Elhindi, reside in the UAE.

Cerner did not address in its opposition to dismissal the sixth factor—enforceability of the judgment. In any case, the bankruptcy court noted that if

Cerner obtains a judgment in the UAE, procedures exist in the United States, including through the bankruptcy case, for seeking enforcement. Cerner argues that the bankruptcy court failed to consider that a UAE court cannot order specific performance or grant security under the Guarantees on assets located in Washington or Oregon. Actually, the bankruptcy court did consider this fact and rejected it. Further, Cerner's argument assumes that Belbadi LLC has any assets in those states and that such assets were put up as security for payment under the Guarantees, which is disputed. In any event, Cerner will have enforcement options here, if necessary, assuming it gets a judgment in the UAE.

Finally, respecting the seventh factor—other practical problems that make trial of a case easy, expeditious and inexpensive—the bankruptcy court found that the cost for interpretive services and services needed to translate documents from Arabic to English provided additional complications. There was also the potential for mistakes, as the differences between the English and Arabic versions of the Guarantees illustrated. The court found that these additional complications, while not dispositive, weighed in favor of the UAE forum.

Cerner argues that no practical problems such as potential issues with interpreters and translators existed. Cerner contends that all of the witnesses speak English fluently, as evidenced by their depositions and prior trial testimony, and that no other documents other than the Guarantees were in Arabic. Thus, argues Cerner, the bankruptcy court abused its discretion by improperly invoking "additional complications" as evidence weighing in favor of the UAE. Even if Cerner's assertions, which were not established in the

22

record, were correct, this one factor is not dispositive and would not support a conclusion that the bankruptcy court abused its discretion in its weighing of the private interest factors.

Because the bankruptcy court's findings are supported by the record, we conclude that it did not abuse its discretion when it determined that the private interest factors favored dismissal.

### b.     Public interest factors

The public factors related to the interests of the forums include: "(1) the local interest in the lawsuit; (2) the court's familiarity with the governing law; (3) the burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to a particular forum." *Boston Telecomms. Grp.*, 588 F.3d at 1211 (quoting *Tuazon*, 433 F.3d at 1181).

In carefully considering these five factors, the bankruptcy court found that three weighed in favor of litigation in the UAE and that two were neutral. Like the private interest factors, Cerner argues that the bankruptcy court misapplied these factors to determine that they too supported dismissal on forum non conveniens grounds. While Cerner argues that all five factors weighed in favor of resolving the Adversary Proceedings here rather than the UAE, it does not directly challenge the court's findings on factors (3) and (4), which the court found were neutral. We conclude that the bankruptcy court did not misapply any of the public interest factors.

The first factor—local interest in the lawsuit—focuses on whether the forum in which the lawsuit was filed has its own identifiable interest in the litigation that can justify proceedings as opposed to how well-equipped a

23

jurisdiction is to handle a case. *See Carijano*, 643 F.3d at 1232. The bankruptcy court found that, while it clearly had an interest in the assets of Vandevco and Orland, it had no identifiable interest in the primary dispute between Cerner and Belbadi LLC—two foreign corporations that negotiated and entered into commercial contracts in the UAE under UAE law. Conversely, the court found that the UAE had a strong interest in this litigation: (1) the contract was negotiated and entered into in the UAE and is governed by UAE law; (2) Belbadi LLC is a UAE company, and Cerner is a foreign corporation which conducts business primarily, if not exclusively, in the Middle East and Africa; (3) the majority of the material witnesses and evidence at the center of the controversy are in the UAE; and (4) Cerner and Belbadi LLC consented to jurisdiction in the UAE. Consequently, the court found that this factor weighed in favor of litigation in the UAE.

Cerner argues that the bankruptcy court abused its discretion by focusing solely on the connections between the Guarantees and the UAE and ignoring the local interest of Washington and Oregon in a party's use of sham alter ego entities to evade legitimate creditor claims. Cerner contends that its ability to take and hold security anywhere Belbadi LLC's assets could be found in the United States, including the Vancouver Center in Washington, was a crucial part of the Guarantees which the bankruptcy court ignored.

First, as the bankruptcy court correctly observed, the Guarantees do not identify any specific security, nor was a security agreement ever executed for any of Belbadi LLC's alleged assets in Washington or Oregon, including those in the Vandevco and Orland estates. Second, the bankruptcy court did not ignore

24

this issue as Cerner contends. Rather, it considered it and noted that the issue of Cerner's direct access to the bankruptcy estates as a source of recovery would be addressed and adjudicated in the claim proceedings, and if Cerner prevailed, it would be provided relief through a confirmed plan. In the court's opinion, however, this did not create an interest for the states of Washington or Oregon in the breach of contract claim between Cerner and Belbadi. We agree. The actions forming Cerner's complaints took place between foreign parties outside of the United States and involve foreign law. We see no abuse of discretion by the court as to this factor.

The bankruptcy court found that the second factor—the court's familiarity with the governing law—also weighed in favor of litigation in UAE. The Guarantees are governed by UAE law. The court acknowledged its unfamiliarity with UAE law, and noted that reading, understanding, and applying UAE law—which is written in Arabic—would require translators and research platforms the court currently did not utilize. The court was also concerned that its lack of familiarity with UAE law and the UAE's legal system might impact its ability to effectively and efficiently adjudicate the contract dispute.

Cerner argues that the bankruptcy court abused its discretion as to this second factor because familiarity with UAE law was a minor issue. Cerner argues that its claim for breach of the Guarantees is straightforward, and therefore the bankruptcy court's need for familiarity with UAE law to resolve it would be minimal. Cerner argues, the court's notion that this case would

25

present difficult issues of UAE law requiring extensive translation or research was specious.

That the bankruptcy court viewed UAE courts as better positioned to adjudicate matters arising under UAE law does not constitute an abuse of discretion. While the need to apply foreign law does not warrant dismissal in itself, it is a factor favoring dismissal. *Piper Aircraft*, 454 U.S. at 260 & n.29. Cerner has never fully explained its reluctance to litigate what it contends is a "simple" breach of contract action in the UAE. In any event, Cerner's position is undermined by the fact that it has prevailed in litigation there against Belbadi LLC over some aspects of the Guarantees. Thus, not only are UAE courts already familiar with the applicable law, at least two of them are familiar with the parties and the facts of this case.

Finally, as to the fifth factor—the costs of resolving a dispute unrelated to the forum—the bankruptcy court rejected Cerner's argument that this factor was inapplicable because it pertains only to the costs associated with "unrelated disputes," and it was Cerner's contention that the suit on the Guarantees was not an "unrelated" dispute. The bankruptcy court had already determined that the suit against Belbadi LLC was unrelated to the administration of Vandevco and Orland's estate assets. Thus, it found that the costs to litigate this unrelated matter in the bankruptcy court would be tremendous with respect to witnesses, evidence, and court resources. Accordingly, the court found that this factor weighed in favor of dismissal.

Cerner disputes the bankruptcy court's finding that its suit against Belbadi LLC was unrelated to the administration of the debtors' assets within

the estates, when those assets are directly connected to Cerner's claims and are the assets Cerner seeks to "take and hold" under the Guarantees. Again, determining Belbadi LLC's liability under the Guarantees has nothing to do with Cerner's claims against the estates of Vandevco and Orland, which will be allowed if Cerner is successful in the alter ego matter being litigated in the claim proceedings.

Because the bankruptcy court's findings are supported by the record, we conclude that it did not abuse its discretion when it determined that the public interest factors favored dismissal.

### 3. Final analysis on the private and public interest factors

In summary, the bankruptcy court properly considered the relevant private and public interest factors, its findings are supported by the record, and its balancing of these factors to conclude that they weighed in favor of dismissal was not unreasonable.

### CONCLUSION

Because the UAE provides an adequate alternative forum and based on the balance of private and public interest factors, we conclude that the bankruptcy court did not abuse its discretion in dismissing the Adversary Proceedings on forum non conveniens grounds. We AFFIRM.